F I L E D
Clerk
District Court

APR 19 2021

for the Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| FRANCISCO NAKATSUKASA BASA, | Civil Case No. 1:20-cv-00025 |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION DENYING DEFENDANTS' MOTION TO DISMISS** |
| JOSE PANGELINAN, GEORGIA CABRERA, AND ALFRED CELES, in their individual capacities, | |
| Defendants. | |

Before the Court is Defendants Jose Pangelinan and Georgia Cabrera's (collectively "Defendants") Motion to Dismiss. (ECF Nos. 15 and 15-1.) Plaintiff Francisco N. Basa ("Basa") is a pro se inmate incarcerated in the Federal Department of Corrections in Honolulu, Hawai'i alleging one 42 U.S.C. § 1983 claim against Defendants in their individual capacities.[1] Both Defendants are employed as CNMI Department of Corrections ("DOC") officials. On March 18, 2021, the Court held a hearing on Defendants' motion at which Basa appeared telephonically from the correctional institution in Hawai'i, and Defendants appeared through counsel, CNMI Assistant Attorney General Leslie Healer. At the hearing, the Court entertained arguments based on the filings and, having

---

[1] The third Defendant in this matter, Alfred Celes, is represented by the United States Attorney's Office. As a United States employee, Celes is operating on a different briefing timetable. His response to Basa's complaint is not due until May 6, 2021.

1

reviewed the record and considered the applicable law, orally denied Defendants' motion. The Court now enters this Memorandum for denying the motion.

## I.    FACTUAL BACKGROUND

Basa self-surrendered to the CNMI DOC on June 30, 2020 to begin serving his 11-month term of imprisonment for violating his supervised release. *United States v. Basa*, 1:05-cr-00028-1 (D. N. Mar. I. June 16, 2020) (Mins., ECF No. 139.) One month later, on July 30, 2020, the Federal Bureau of Prisons transferred Basa to the Department of Corrections in Guam. Basa was then transferred a second time to Hawai'i where he is now incarcerated.

During his 30-day incarceration in the CNMI DOC, Basa began writing sick-call requests to the DOC medical unit petitioning to see a psychiatrist. Apparently, he had been "hearing voices again telling [him] to hurt himself, [and] hurt those people who [treated him] like [an] animal." (Basa Letter 4, ECF No. 8-3.) According to Basa, he receives psychiatric medication in the form of Seraquil and Adderall. (*Id.*)

For at least one of the sick call requests, Basa requested the medical unit officer sign an acknowledgment of receipt. This request was denied, however, because Defendant Pangelinan instructed the medical unit officer not to sign the acknowledgment. As described by Basa: "it's kin[d] of weird cuz [it's] like they [are] trying to hide something." (*Id.*) Thereafter, Basa asked Defendant Pangelinan numerous times to follow up with the medical unit on the status of his sick-call requests. However, Basa did not receive a response until he filed a grievance over two weeks later on July 18, 2020. (*See id.* ("I always ask him to help me follow up with medical staff for my sick-call request status, but always still the same no-action, no feedback.").)

In his July 18 grievance, Basa alleged that he was being deprived of access to adequate medical care. Two days later, Basa was brought to Defendant Cabrera who "apologized for all the medical delays and assured [Basa] that everything is be[ing] tak[en] care [of]." (*Id*.) She informed Basa that medical appointments and transportation for those appointments were being arranged. (*Id*.) As a result, Basa claims to have been "so satisfied" that he signed off on agreeing not to pursue any further grievances. (*Id*. at 5.)

Two days after his meeting with Defendant Cabrera, Basa met with a CNMI DOC mental health counselor named "Jenn." (*Id*.) Basa expressed his desire to see a psychiatrist, but due to his erratic and "angry" behavior, the meeting only lasted approximately 10 minutes. Nevertheless, Basa told Jenn that he was "in desperate need" to see his psychiatrist. (*Id*.) Jenn indicated that she would speak with Defendant Cabrera so Basa could be "stabilized," and agreed that DOC lacked access to adequate medical care. (*Id*.)

On July 30, 2020—12 days after his meeting with Defendant Cabrera—Basa was transported to Guam by the U.S. Marshals Service. He was never brought to his medical appointment and subsequently filed his complaint with the Court.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal on the grounds that the court lacks subject-matter jurisdiction. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Failure to exhaust administrative remedies, however, is not a jurisdictional bar to filing suit. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc) ("Failure to exhaust under the PLRA is 'an

affirmative defense the defendant must plead and prove.'" (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007)). It is an affirmative defense and need not be specially pleaded in the complaint by the prisoner. *Jones*, 549 U.S. at 216. At the hearing, Defendants conceded that non-exhaustion is an affirmative defense that does not preclude the Court's jurisdiction. Consequently, the Court denies Defendants' Rule 12(b)(1) motion for lack of jurisdiction based on their non-exhaustion argument.

A party may move for dismissal where the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Factual allegations are accepted as true and the complaint is read in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, it is not enough to "simply recite the elements of a cause of action"; a plaintiff must allege enough facts "to give fair notice" to the opposing party to "defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Accepting the facts as true, the Court must still ascertain whether the plaintiff's factual allegations "plausibly suggest an entitlement to relief." *Id*.

Pro se pleadings, however, must be liberally construed. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). "[P]articularly in civil rights cases," courts are urged "to construe the pleadings liberally and to afford the petition the benefit of any doubt." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotation marks omitted). Nevertheless, a pro se litigant's complaint may be dismissed "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017).

//

4

### III.    DISCUSSION

Defendants argue that Basa fails to state a claim upon which relief can be granted on two bases. First, Basa fails to adequately demonstrate exhaustion of administrative remedies. Second, Basa fails to adequately state a Section 1983 claim of deliberate indifference to his psychiatric needs.

At the outset, the Court notes that Defendants support their motion to dismiss arguing several factual representations without any supporting affidavits or documents. For instance, they state that Basa did in fact have an appointment scheduled with a psychiatrist, that Basa did not inform anyone he was hearing voices, and that Basa did not articulate any sense of urgency. Yet no affidavit, medical or administrative record, or any other documents were offered attesting to the veracity of their claims. At the hearing, Defendants' counsel further stated that she had gone through Basa's sick call requests and found no evidence of a request to see a psychiatrist. But even these sick call requests were not submitted to the Court either before or during the hearing.

Where Defendants improperly presented testimony or other factual representations in their motion to dismiss, the Court cannot base its decision on such allegations. Rather, it would be more appropriate for Defendants to present their evidence in support of their assertions and thereafter give the Court the opportunity to exercise its discretion in whether to consider such evidence. To be sure, the Court is mindful that it does not consider matters outside the pleadings unless it is to convert Defendants' motion to one for summary judgment under Rule 12(d) of the Federal Rules of Civil Procedure; indeed, it is improper to consider extrinsic materials that are not documents attached to the complaint or documents the Court may take judicial notice of. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). However, once such evidence is submitted, the Court may exercise its

discretion based on a Rule 12(d) conversion.

With that in mind, on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the primary question before the Court is whether Basa has stated enough facts to allege a plausible Section 1983 claim. Accepting all Basa's allegations as true and construing the information in the light most favorable to him, the answer is yes.

**A. Exhaustion of Administrative Remedies**

Defendants argue that Basa did not explain when and how he exhausted his remedies, and that he affirmatively chose not to appeal the decision of his July 18 grievance. However, while the U.S. Supreme Court has consistently ruled that "unexhausted [Section 1983] claims cannot be brought in court," *Jones*, 549 U.S. at 211, a defendant who asserts a Rule 12(b)(6) motion based on non-exhaustion "must produce evidence proving failure to exhaust in order to carry their burden." *Albino*, 747 F.3d at 1166. Cases in which a prisoner's failure to exhaust is clear from the face of the complaint are "rare *because a plaintiff is not required to say anything about exhaustion in his complaint.* As the [U.S. Supreme] Court wrote in *Jones*, … 'inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id*. at 1169 (quoting *Jones*, 549 U.S. at 216) (emphasis added). Thus, a motion for summary judgment is a more appropriate means to raise a prisoner's failure to exhaust their administrative remedies. *Id*. at 1166. Here, Defendants have not provided any evidence to meet their burden either for a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment. As Basa is not required to specifically plead exhaustion in his complaint, the Court denies Defendants' motion to dismiss on non-exhaustion grounds.

//

### B.  Deliberate Indifference

Defendants generally argue that at no point did they refuse or deny Basa treatment. Rather, they argue that Basa did not inform anyone that he was hearing voices, that he needed immediate medical attention, or that his sick-call requests explicitly asked for psychiatric services. Any delay in providing Basa psychiatric care is a result of the unfortunate timing of his request and the appointment date. Although Defendants state throughout their motion that Basa had an approved and scheduled appointment with a psychiatrist, again, none of these facts were supported with evidence. In addition to failing on the facts, the Court concludes that the motion also fails on the law.

Under the Eighth Amendment, prison officials have a duty to provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To hold an official liable for violating this duty, a prisoner must satisfy two elements. First, the prisoner must demonstrate the existence of a "serious medical need." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). Psychiatric care qualifies as a serious medical need. *See Bremer v. Cnty. of Contra Costa*, 2016 WL 6822011, at *5 (N.D. Cal. Nov. 18, 2016) (acknowledging psychiatric care as a serious medical need); *Torlucci v. Evans*, 2010 WL 5115624, at *3 (N.D. Cal. Dec. 9, 2010) (identifying agoraphobia and social phobia as serious mental health needs); *but see Doty v. Cnty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) (concluding that "mild stress-related ailments" do not constitute a serious medical need because such "requires an ailment of a greater magnitude or with a cause separate from confinement."). Here, Defendants concede that Basa plausibly alleges he suffers from a serious psychiatric disorder, so this element is satisfied.

However, a prisoner must also prove that the official was deliberately indifferent to that

medical need. Deliberate indifference is "satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). An inadvertent or negligent failure to provide adequate medical care is insufficient for a Section 1983 claim. *Id.* at 1096. Rather, the inmate must claim that the government official knew of and disregarded an excessive risk to the inmate's health and safety. *Lolli v. Cnty. of Orange*, 351 F.3d 410, 419 (9th Cir. 2003).

Courts have found law enforcement officials deliberately indifferent to a prisoner's psychiatric needs. *Compare Bruggeman v. Lewis*, 21 F.3d 1111, 1111 (9th Cir 1994) (finding an "arguable claim" that defendants were deliberately indifferent when plaintiff-prisoner "had been suffering from suicidal tendencies.") *with Cano v. Taylor*, 739 F.3d 1214, 1217 (9th Cir. 2014) ("[T]he record indicates that the Defendants were very responsive to [plaintiff's] complaints. The record is replete with health need request forms filed by [plaintiff] and the record indicates that [plaintiff] was seen by mental health care employees regularly for his complaints."). Deliberate indifference can manifest itself "when prison officials deny, delay or intentionally interfere with medical treatment . . . ." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1991)). Delay may be manifested when "an inmate . . . must endure an untreated serious mental illness for any appreciable length of time." *Capps v. Atiyeh*, 559 F. Supp. 894, 916 (D. Ore. 1982).

1.   Defendant Pangelinan

As characterized by Basa, Officer Pangelinan's fault lies in what appears to be a refusal to communicate Basa's needs. Apparently, Officer Pangelinan instructed a DOC medical unit officer not to sign an acknowledgment of receiving at least one of Basa's sick call requests. Apart from this

allegation, Basa describes that he consistently asked Officer Pangelinan "to help [him] follow up with medical staff for [his] sick-call request status, but always still the same no-action, no feedback." (ECF No. 8-3 at 4.) Basa later details that Officer Pangelinan had instructed him to "lay low, [and] stop writing grievances against the [DOC]," otherwise Basa may face repercussions. (*Id*. at 5.)

Taking as true Basa's representations, the Court finds that he has (1) stated sufficient factual allegations to have Officer Pangelinan defend himself on the basis of deliberate medical indifference, and (2) stated sufficient factual allegations to plausibly suggest an entitlement to relief. Here, Basa alleges that Officer Pangelinan was aware of his requests and interfered with Basa's access to adequate psychiatric care. Instructing a medical unit officer to refuse signing an acknowledgment of receipt does not—by itself—warrant a finding of deliberate medical indifference. However, taken together with Basa's repeated requests for follow-ups and Pangelinan's instructions to "lay low" and "stop writing grievances" suggests that Officer Pangelinan knew Basa needed medical care but either did not communicate that need or did not ensure that need was taken care of. This alleged conduct establishes a plausible Section 1983 claim. Taking as true Basa's allegations and construing his complaint liberally as the Court must do, it appears that Basa had a serious medical need, that he communicated that need to Officer Pangelinan, and that no remedy was provided to Basa. Whether Officer Pangelinan is ultimately at fault for the alleged lack of medical care is another issue that will have to be resolved at a later date. At this juncture, the Court finds that Basa has stated a sufficiently plausible Section 1983 claim for relief.

2. Defendant Cabrera

Basa claims that two days after submitting a grievance averring a deprivation of access to

9

adequate medical care, he was escorted to speak with Defendant Cabrera. During their meeting, Defendant Cabrera apologized for the "medical delays" and assured Basa that he would receive medical care. In particular, she informed Basa that "she just finished talking to the U.S. Marshall [sic] Service and all my transport days to my medical appointments are being approved by U.S. Marshall [sic] Service." (Basa Letter, ECF No. 8-3 at 4.)

Again, the Court finds that Basa's inadequate medical claim care against Defendant Cabrera passes muster at this stage of the proceedings. Defendant Cabrera knew Basa had a medical need serious enough to set-up an appointment and apologize for the "delay." And, furthermore, Basa's complaint gives the impression that despite Defendant Cabrera's acknowledgment of Basa's medical needs and her statement that an appointment was set-up, nothing was ever done. Based on the situation described, it would seem—without further evidence—that Defendant Cabrera failed to provide Basa any medical care. Again, whether Defendant Cabrera actually set up the appointment and whether Basa's transfer to the Guam Department of Corrections soon thereafter was an unfortunate coincidence, cannot be determined yet. Until Defendants provide evidence rebutting Basa's claims, Basa's allegations are sufficiently pled at this stage.

## IV.    CONCLUSION

Based on the foregoing reasons, the Court DENIES Defendants' motion to dismiss without prejudice and grants them leave to AMEND their motion to dismiss. Defendants shall file an amended motion to dismiss no later than **May 6, 2021** with any relevant statements or evidence attached. Basa's opposition is due no later than three weeks thereafter. Defendants are further ORDERED to file a Certificate of Service of mailing their amended motion to dismiss to Basa along with any notice of

hearing.

Having concluded that Defendants' current motion is not well founded, the Court nevertheless directs Basa to be mindful of his representations to the Court. Pleadings submitted to the Court must have evidentiary support and must not be presented for the purposes of harassment, delay, or increasing costs of litigation. Fed. R. Civ. P. 11(b)(1), (3). Where a violation of the Federal Rules of Civil Procedure occurs, courts may *sua sponte* impose sanctions for the party responsible for the violation—including pro se litigants. *See* Fed. R. Civ. P. 11(c)(1); *see also W.V. ex rel. N.V. v. Encinitas Union School Dist.*, 289 F.R.D. 308, 312 (S.D. Cal. 2012). This Court has already issued an order requiring a separate pro se inmate to show cause why that inmate's case should not be dismissed with prejudice pursuant to Rule 11 for factual misrepresentations. *See Aguon v. Attao et al.*, 1:21-cv-0003 (D. N. Mar. I. Apr. 6, 2021) (Order to Show Cause, ECF No. 13). Basa is cautioned to be sure that his allegations are not misrepresentations lest he find himself in a similarly precarious position.

IT IS SO ORDERED this 19th day of April, 2021.

RAMONA V. MANGLONA
Chief Judge